**PITTSBURGH RADIO SUPPLY HOUSE (WJAS) v. FEDERAL COMMUNICATIONS COMMISSION (WATR Co., Intervener).**

**INTERMOUNTAIN BROADCASTING CORPORATION v. SAME.**

**HEAD OF THE LAKES BROADCASTING CO. v. SAME.**

Nos. 7024, 7025, 7027.

United States Court of Appeals for the District of Columbia.

Argued April 4, 1938.

Decided May 23, 1938.

Geo. O. Sutton, of Washington, D. C., for appellant Pittsburgh Radio Supply House.

Paul M. Segal, George S. Smith, and Harry P. Warner, all of Washington, D. C., for appellant Intermountain Broadcasting Corporation.

Arthur W. Scharfeld, Philip G. Loucks, and Joseph F. Zias, all of Washington, D. C., for appellant Head of the Lakes Broadcasting Co.

Hampson Gary, Gen. Counsel, George B. Porter, Asst. Gen. Counsel, Fanncy Neyman, and Andrew G. Haley, Asst. Counsels, and William H. Bauer and Frank U. Fletcher, all of Washington, D. C., for appellee Federal Communications Commission in all three cases.

H. L. Lohnes and H. L. McCormick, both of Washington, D. C., for intervener.

Before GRONER, Chief Justice, and STEPHENS and EDGERTON, Associate Justices.

GRONER, C. J.

These three cases are here on one record and were heard by us as one case. The appeal is from an order authorizing WATR, licensee of a radio station at Waterbury, Connecticut, to change its frequency from 1190 kc. to 1290 kc., to increase its power from 100 watts to 250 watts and its hours of operation from limited to unlimited time. Appellants are Pittsburgh Radio Supply House, licensee of station WJAS in Pittsburgh, Intermountain Broadcasting Corporation, licensee of KDYL in Salt Lake City, and Head of the Lakes Broadcasting Company, licensee of station WEBC in Duluth. Each operates on the 1290 kc. frequency, and each has nighttime power of 1,000 watts. In January 1935 Head of the Lakes applied to the Commission for an increase of nighttime power from 1,000 watts to 5,000 watts. Pittsburgh applied for the same increase in May, 1936. Intermountain, at the time material here, had no pending application for change of power. At the time the applications just mentioned were filed with the Commission its Rule 120 designated the frequency 1290 kc. as one of many "regional frequencies", and the rule provided that the operating power of stations assigned to that frequency should not exceed 1,000 watts nighttime. The Commission, in view of this rule, advised Head of the Lakes and Pittsburgh that their applications requested more power than was permitted under the rule, but the applicants replied that they nevertheless desired to prosecute the applications. The Commission accordingly designated the applications for hearing along with other 5,000-watt applications, but no date for this hearing was set by the Commission. It was after these applications had been filed that Waterbury filed its application. On September 22, 1936, the Commission granted Waterbury's application without hearing, and on October 27th Pittsburgh

filed a protest in accordance with the Commission's Rule 104.4; whereupon the Commission reconsidered its grant to Waterbury and designated its application for hearing. Notice of this was served by the Commission upon all parties who might have an interest in the proceeding. In due course Waterbury's application was referred to an examiner of the Commission, and the hearings thereon were concluded January 29, 1937. On March 20th following the examiner submitted his report recommending that the application be granted. Pittsburgh filed exceptions, and its request for oral argument was granted and argument was had June 3, 1937. On July 6th following the Commission entered an order denying the application, but later on the same day reconsidered its action and granted the application, its order to be effective at 3 A.M., E.S.T., August 3, 1937. Pittsburgh, Intermountain, and Head of the Lakes were unsuccessful in their petition for rehearing, and they appealed to this court. Waterbury intervened. A short statement of the reasons for appeal filed by each appellant is as follows:

Pittsburgh charges, first, that the order is unlawful because the Commission granted Waterbury's application before considering Pittsburgh's prior and pending application, whereby Pittsburgh will be deprived of its lawful right to a full and fair hearing since the grant to Waterbury places obstacles in the way of a grant to Pittsburgh which did not exist when its application was originally filed; second, that the Commission's initial action in denying Waterbury's application was final and the Commission was without power thereafter to reverse its position and grant the relief sought; and, third, that in making the grant to Waterbury the Commission ignored material evidence adduced at the hearing "regarding, inter alia, questions of interference".

Intermountain's position is that the grant to Waterbury "may" cause interference with its service "and will interfere with the logical development of the 1290 kc. frequency in the allocation plan of the Federal Communications Commission". It also insists that the Commission exhausted its fact-finding power when it first denied Waterbury's application and was without authority to grant it thereafter.

Head of the Lakes charges that the Commission should have considered its application for increase of power before considering and acting on Waterbury's appli-

cation; that the Commission had no authority to reverse its first July 6th order; and that the Commission erred as a matter of law in determining that public interest would be served by granting Waterbury's application.

Condensed, the grounds of appeal may be said to be that the Commission erred in acting on the Waterbury application while the other applications requesting increased power on the 1290 kc. frequency were pending; that the action first taken on July 6th was conclusive and final and exhausted the Commission's power, so that the later grant was a nullity; and that the Commission erred in failing to consider or to give proper weight to evidence relating to questions of interference.

Section 402(b), Communications Act of 1934, (47 U.S.C.A. 402(b), permits an appeal to this court by (1) any applicant for a license or renewal or modification of an existing license whose application is refused and (2) by any other person aggrieved or whose interests are adversely affected by a decision of the Commission granting or refusing an application. Unless one or the other of these grounds is shown, the appeal will have to be dismissed. Universal S. W., Inc., v. Commission, 59 App.D.C. 319, 41 F.2d 113.

The Commission defends on the principal ground that none of the appellants has an appealable interest, saying that it has not denied the application of any of them and that the granting of intervener's application does not aggrieve or adversely affect the interests of any of them.

Enough has been said to indicate that appellants are not entitled to appeal under 402(b) (1), for Intermountain has no application pending, and the applications of Pittsburgh and Head of the Lakes have not been acted on. Nor is there any claim by any of appellants under 402(b) (2) that they will suffer financial or economic injury, loss of patronage, or loss of listening audience. Head of the Lakes does not assert that it will suffer any electrical interference from Waterbury's operations. Intermountain's claims in this respect are general, and as to both it may be said that, in view of the distances between Duluth and Salt Lake City on the one hand and Waterbury on the other, it is obvious that any claim of interference so far as either is concerned is wholly unsubstantial. Only Pittsburgh makes any serious charge that the grant to Waterbury will result in elec-

306

trical interference. As to this charge, the evidence unmistakably shows that the operations of Waterbury on the 1290 frequency at 250 watts will not interfere with Pittsburgh, and so it is obvious that Pittsburgh's claim in this regard has reference only to the time when the Commission shall have granted its request for increase of power from 1,000 watts to 5,000 watts. This the Commission cannot do until its present rule is abrogated and a new policy in relation to regional frequencies is adopted. When we analyze the reasons for the appeal we find that Intermountain claims no aggrievement at all, except that the Commission's order is arbitrary, capricious, and void. But this objection, as we said in Great Western Broadcasting Association v. Commission, 68 App.D.C. 119, 94 F.2d 244, 248, might just as well be made by a stranger to the record. Pittsburgh and Head of the Lakes are in no better position, save for one fact. They did have applications for increased power on the 1290 frequency pending when intervener applied for assignment to that frequency. But when we examine the record, we find that Head of the Lakes, though a party to the hearing before the Commission, at no time applied to have its application given prior consideration or objected to prior consideration of Waterbury's application; and this leaves us with only the objection in that respect made by Pittsburgh.

■ As to it, the record shows that it requested that Waterbury's application and its application for increased power be considered together. This request was in line with the Commission's Rule 106.4. If Pittsburgh's application had been for a lawful grant, and if it were shown that the Commission's prior consideration of Waterbury's application seriously prejudiced Pittsburgh, we would have a case in which we might say Pittsburgh had appealable interest as a "person aggrieved," notwithstanding the latitude which we have said should be permitted to the Commission in such matters. Pulitzer Publishing Co. v. Federal Communications Comm., 68 App. D.C. 124, 94 F.2d 249, 252. But that is not this case. Here Pittsburgh has applied for a grant which would be in direct violation of Rule 120, and it can succeed in its objective only by inducing the Commission to change the rule. This is a matter so wholly of policy under the provisions of the Act and so peculiarly within the special and expert knowledge of the Commission that to

undertake to control it judicially would be clearly an impingement upon the jurisdiction of the Commission. The Commission has in the past considered whether Rule 120 ought to be changed in the manner Pittsburgh requests, but no change has been made and, while the question may be said to be still open, we have no reason to assume it will be changed and certainly no right to say that the Commission should suspend its functions pending its determination of that question. Hence, we think Pittsburgh has no appealable interest which we may consider here.

In the view we have just expressed, it is clear we have no right to consider the claimed irregularity on the part of the Commission in first denying and then granting Waterbury's application. However irregular the action in that respect may be, it is not subject to review save at the instance of a person aggrieved or whose interests are adversely affected. None of the appellants, for the reasons we have pointed out, can meet the test of appealable interest laid down in the statute, and therefore the three appeals are dismissed.

Appeals dismissed.