UNITED STATES CANE SUGAR REFIN-
ERS' ASS'N et al. v. McNUTT.

No. 307.

Circuit Court of Appeals, Second Circuit.

Aug. 27, 1943.

Sullivan & Cromwell, of New York City (L. A. Crosby and Philip L. Miller, both of New York City, of counsel), for petitioners.

Wendell Berge, Asst. Atty. Gen., and Oscar A. Provost and Edward G. Jennings, Sp. Assts. to Atty Gen. (Edward B. Williams, of Washington, D. C., Atty., Federal Security Agency, of counsel), for respondent.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CHASE, Circuit Judge.

After extensive hearings held in accordance with the requirements of the Federal Food, Drug, and Cosmetic Act, of 1938, 52 Stat. 1040, 21 U.S.C.A. §§ 301-392, the Federal Security Administrator promulgated amended regulations which established definitions and standards of identity for canned apricots, cherries, peaches and pears. In so doing he undertook to act pursuant to § 401 of the above statute which provides as follows:

"Sec. 401 [§ 341]. Whenever in the judgment of the Administrator[1] such action will promote honesty and fair dealing in the interest of consumers, he shall promulgate regulations fixing and establishing for any food, under its common or usual name so far as practicable, a reasonable definition and standard of identity, a reasonable standard of quality, and/or reasonable standards of fill of container. * * * In prescribing a definition and standard of identity for any food or class of food in which optional ingredients are permitted, the Administrator shall, for the purpose of promoting honesty and fair dealing in the interest of consumers, designate the optional ingredients which shall be named on the label. * * *"

Sec. 403 provides (a) that a food shall be deemed misbranded if in any particular its label is false or misleading; or, inter alia, if it purports to be, or is represented to be, a food for which a definition and standard of identity has been promulgated as provided in § 401 unless "its label bears the name of the food specified in the definition and standard, and, insofar as may be required by such regulations, the common names of optional ingredients * * * present in such food." § 403(g) (2).

By virtue of § 701(e) the administrator may act upon his own motion or upon the application setting forth reasonable grounds for action, of all, or a substantial portion of any interested industry. When he does take such action he is required to hold a public hearing upon any proposal to issue,

[1] By Reorganization Plan No. IV, 54 Stat. 1234, 5 U.S.C.A. § 133t note, the Federal Food and Drug Administration was transferred from the Department of Agriculture to the Federal Security Agency and the functions of the Secretary of Agriculture in the administration of the Act were transferred to the Federal Security Administrator. The terms actually used in this statute have been changed accordingly.

amend, or repeal any regulation contemplated by certain sections of the statute of which § 401 is one and at the hearing any interested person may be heard in person or by his representative. The Administrator shall make public his action in issuing, amending and repealing the regulation, or in determining not to take such action, as soon as practicable after completion of the hearing.

Sec. 701(f) (1) provides that: "In a case of actual controversy as to the validity of any order under subsection (e), any person who will be adversely affected by such order if placed in effect may * * * file a petition with the Circuit Court of Appeals of the United States for the circuit wherein such person resides or has his principal place of business, for a judicial review of such order. * * *"

Sec. 701(f) (3) confers jurisdiction upon such Circuit Court of Appeals, (so far as now invoked) to affirm the order, or to set it aside in whole or in part temporarily or permanently. It provides that the findings of the Administrator as to the facts shall be conclusive if they are supported by substantial evidence.

Following the above mentioned hearings, at which all these petitioners were represented, the Administrator duly promulgated, with regulations, the order which the petitioners are now seeking to have reviewed. Insofar as we are presently concerned the regulations dealt with the sweetening ingredients of the canned fruits previously mentioned and in respect to canned peaches, which may be taken as typical for all, provided in substance that all sugar might be used for sweetening though, as optional saccharine ingredients, dextrose might be used in stated proportions in combination with sugar and so might corn sirup. For the purposes of the regulations sugar was defined as "refined sucrose or invert sugar sirup. The term 'invert sugar sirup' means an acqueous solution of inverted or partly inverted, refined or partly refined sucrose, the solids of which contain not more than 0.3 percent of weight of ash, and which is colorless, odorless, and flavorless except for sweetness." Dextrose was defined as "the hydrated or anhydrous, refined monosaccharide obtained from hydrolized starch." Corn sirup was defined as "an aqueous solution obtained by the incomplete hydrolysis of cornstarch, and includes dried corn sirup; the solids of corn sirup and of dried corn sirup contain

not less than 58 percent by weight of reducing sugars."

It was further provided that the optional packing media which contained an added sweetener, that might be sucrose or sucrose in combination with dextrose or with dextrose and corn sirup, should be designated as (3) slightly sweetened water or (4) light sirup; or (5) heavy sirup; or (6) extra heavy sirup; or (7) slightly sweetened peach juice; or (8) light peach juice sirup; or (9) heavy peach juice sirup; or (10) extra heavy peach juice sirup as the case might be. And when a sweetened packing media was used it was made a sufficient compliance with labeling requirements in that respect to use only the appropriate name from the above list without disclosing the fact that the sweetener was all sugar or sugar in one of the permitted combinations. Before this, canners of these fruits might use dextrose or corn sirup as a sweetener only if that fact was disclosed on the label. It is because this requirement was done away with that the petitioners now contend that they were adversely affected in a case of actual controversy to give them "standing to appeal" so as to bring this petition to review within the scope of § 701(f) (1).

The regulations further provided in respect to the content of the optional packing media already listed by name and the proportions to sucrose in which dextrose and corn sirup might be used that:

"As used in this paragraph the term 'water' means, in addition to water, any mixture of water and peach juice; and the term 'peach juice' means the fresh or canned expressed juice of mature peaches, of any varietal group, specified in paragraph (b) of this section, to which no water is added, directly or indirectly.

"Each packing media (3) to (10), inclusive, is prepared with a liquid ingredient and a saccharine ingredient.

"* * * The saccharine ingredient from which packing media (3) to (10), inclusive, are prepared is one of the following: sugar; or any combination of sugar and dextrose in which the weight of the solids of the dextrose used is not more than one-half the weight of the solids of the sugar used; or any combination of sugar and corn sirup in which the weight of the solids of the corn sirup used is not more than one-third the weight of the solids of the sugar used; or any combination of sugar, dextrose, and corn sirup in which

twice the weight of the solids of the dextrose used added to three times the weight of the solids of the corn sirup used is not more than the weight of the solids of the sugar used; except that packing media (7) to (10), inclusive, are not prepared with any invert sugar sirup or corn sirup other than dried corn sirup, * * *." There was appended a prescribed range of densities, as measured on the Brix hydrometer fifteen days after the peaches were canned, for packing media (3) to (10) inclusive.

One result was to permit canners of the fruits to use some dextrose or corn sirup or both in combination with sugar without in express terms so labeling the product. As both of these optional sweeteners, though less sweet than sugar, were less expensive to use, the petitioners were convinced that fruit canners would be induced to use them to avoid the use of sugar, and, to the extent that this might be done, consider themselves adversely affected by the order.

The respondent, though defending his order on the merits as well, first contends that the petition to review must be dismissed on the ground that the petitioners brought it not as consumers of the regulated product or even as competitors in the production and sale of it, but only in their supposed right as suppliers of an ingredient used in the manufacture of it. We will, accordingly, first attempt the solution of that rather difficult problem.

▇▇▇ It is clear that the petitioners are "adversely affected" only by way of some competition with dextrose or corn sirup producers and suppliers or both which but for the statute and the result of its administration they would encounter anyway and to a greater degree. And it is adequately clear that they would have no standing to appeal, § 701(f) (1) aside, by virtue solely of added competition made possible or probable by regulations promulgated in accordance with § 401. That would be but damnum absque injuria as Judge Frank has recently shown in his comprehensive opinion where an analogous situation was considered under the Bituminous Coal Act of 1937, 15 U.S.C.A. § 828 et seq. Associated Industries of New York State, Inc., v. Ickes, 2 Cir., 134 F.2d 694. Nevertheless a motion to dismiss was there denied and the right to review in behalf of consumers of the regulated product was upheld on the ground that a consumer, faced with the prospect of having to pay higher prices for coal because of the order, was a "person aggrieved" within the provisions of § 6(b) of the Act. The reasoning which led to that conclusion would, we think, apply as well to a petition to review in accordance with §701(f) (1) of the statute here involved brought by one who would be "adversely affected" if the order became effective provided, of course, there was "a case of actual controversy as to the validity" of the order which must be more than merely colorable. Land O'Lakes Creameries, Inc., v. McNutt, 8 Cir., 132 F.2d 653; A. E. Staley Company v. Secretary of Agriculture, 7 Cir., 120 F.2d 258. The latter requirement, obviously, can have substance only when it is based upon some action of the Administrator by which petitioners are "adversely affected" within the statutory meaning of that term. If they are not so affected they can present no actual controversy of which the court can take cognizance. On the other hand persons might be "adversely affected" by action of the Administrator so clearly lawful that there would be no "case of actual controversy" to make a petition to review more than merely frivolous. And so, to support a petition to review both these requirements must be met. We do not find it presently necessary to deal with them separately, however.

In both of the cases just cited the right to review regulations promulgated under the statute here involved was upheld. That was accompanied with the expression of some doubt on the part of the court in the Land O'Lakes case where the regulations had fixed a definition and standard of identity for oleomargarine and the petitioners were manufacturers and purveyors of butter, a product already in competition with oleomargarine and put into keener competition with it as a result of the regulations. That case differs from the instant one in no material respect unless it is distinguishable on the ground that here the competition the petitioners are called upon to meet is too problematical to affect them adversely within the meaning of § 701(f) (1).

▇▇▇ In the Staley case the "actual controversy" of which the court took cognizance on a petition to review regulations promulgated under the instant statute, was between a purveyor of corn sirup which, but for the regulations, could be used as an ingredient in making sweetened condensed milk and purveyors of sugar

whose use was freely permitted. The regulations excluded such use of corn sirup entirely and so deprived the petitioner of all opportunity to compete in that field in the future. It was held that that "adversely affected" it and was enough to support the questioned jurisdiction of the petitioner under § 701. The instant case is closely akin to the Staley case and yet it does not fall readily into what.we conceive to be the meaning of the term "adversely affected" in the light of the principles relied on in our Associated Industries case. The supposed adverse effect is one which leaves the petitioners' product free of all restriction. The petitioners are "adversely affected" only in that their competitors are not hampered more. But though such a relationship to the subject matter of the regulations may be enough in some instance which does not now come to mind, it can only be so when the adverse effect of the regulations, present or future, is "of sufficient immediacy and reality." Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 61 S.Ct. 510, 512, 85 L.Ed. 826. The adverse effect must be a result that is not only reasonably sure to follow the enforcement of the regulations but will be "something more than nominal or highly speculative." National Broadcasting Co. v. Federal Communications Commission, 76 U.S. App.D.C. 238, 132 F.2d 545, 548. It is inevitable that such regulations as these will affect in one way or another a large number of persons. In a sense they "affect" the public at large for whose benefit they are promulgated. It is to be expected that this effect may be thought to be "adverse" by a lesser, but still large number of persons not engaged in making or selling the standardized product. It is, however, inconceivable that Congress intended to permit all persons who could show a remote and uncertain likelihood that the regulations would injuriously affect the market for their produce to file petitions to review merely because they decided that they had been, or might possibly be, put in danger of that. In order to prevent such obstruction to the orderly administration of the statute by virtually unlimited petitions to review, it is necessary that the class of petitioners who have "standing to sue" be confined to those who can show some direct adverse affect traceable with reasonable certainty to the regulations promulgated.

As we said in the Associated Industries case, a consumer threatened with the prospect of having to pay higher prices for coal because of an order which fixes prices and prevents competition among those from whom the consumer purchases is a person "aggrieved." The effect in that instance was direct as well as certainly adverse. So, too, increased competition may be enough, though the policy behind the statute is to maintain competitive practices that are in the public interest, to show that a person has been "adversely affected" by an administrative order. Federal Communications Commission v. Sanders Bros. Radio Station, 309 U.S. 470, 642, 60 S.Ct. 693, 84 L.Ed. 869, 1037. Yet giving effect to such considerations by no means requires their extension to include all persons whose desire to review such regulations as these happens to be created by the mere possibility of having to meet competition in business they would rather have eliminated. The paramount need for the orderly and the reasonably expeditious administration of the statute by the official charged with the duty of making it effective in the public interest creates at least the need of limitations upon the construction of the term "adversely affected" to do away with delays that otherwise could be brought about by persons upon whom the adverse effect of the regulations would at most be so negligible that it should be disregarded to effectuate the public interest the statute was designed to promote.

■ When the regulations are considered in the light of their effect upon the petitioners, it seems adequately clear that the latter do not fall into the class Congress has authorized to seek a review. The regulations do not prevent the use of sugar in the canning of these fruits to whatever extent canners may desire to use it. On the contrary, they require its use in every instance and so far as that requirement makes necessary the use of more sugar than before there is, of course, no adverse effect upon petitioners. What then is the threatened increased competition which the petitioners face? It is merely that the canners may use the permitted amounts of either dextrose or corn sirup or both without mentioning those products by name on the label of their product. There is no claim that the permitted sweeteners, other than sugar, are not wholesome or that consumers would be dissatisfied with the products so sweetened and erroneously attribute their dislike to the use of sugar as a sweetener. What the petitioners are really claiming is that the

regulations will do away with the remote, speculative sales resistance of the public to the marketing of the canned fruits sweetened in some part with dextrose or corn sirup which might be present if the labels on the cans disclosed, by naming them, that the permitted amounts of one or the other or both of the optional sweeteners had been added to the required sugar. If such a tenuous likelihood of injury were enough to cause the petitioners to be "adversely affected," the opportunity for maintaining petitions to review such regulations as these would be so unlimited as to be a serious threat to the practical administration of the statute. In our opinion, therefore, petitioners neither have been, nor will be, adversely affected within the meaning of § 701(f) and this court, accordingly, has no jurisdiction to review the regulations.

Petition dismissed for lack of jurisdiction.