PANHANDLE EASTERN PIPE LINE COMPANY, a Corporation, Petitioner,

v.

FEDERAL POWER COMMISSION, Respondent.

No. 11484.

United States Court of Appeals, Third Circuit.

Argued Feb. 7, 1955.

Decided Feb. 25, 1955.

Rehearing Denied March 21, 1955.

William J. Grove, Washington, D. C., for respondent.

Charles V. Shannon, Washington, D. C., for American Louisiana Pipe Line Co., Michigan Consolidated Gas Co., Michigan Wisconsin Pipe Line Co., intervenors.

Christopher T. Boland, Washington, D. C., for Texas Gas Transmission Corp., intervenor.

Robert A. Derengoski, Lansing, Mich., for Michigan Public Service Commission, intervenor.

James H. Lee, Detroit, Mich., for City of Detroit, Mich., intervenor.

William E. Miller, Washington, D. C., for petitioner in opposition to motions to dismiss.

Before McLAUGHLIN, KALODNER and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

These are motions by the respondent and interveners to dismiss the petition for review of the Commission's opinion No. 276 and accompanying order of October 1, 1954 which issued certificates of convenience and necessity to American Louisiana Pipe Line Company and Texas Gas Transmission Company. Under the opinion and order American Louisiana was authorized to construct a pipeline system from points in Louisiana to points within the State of Michigan. The line would have an initial delivery capacity of approximately 300,000 Mcf of natural gas per day. The same opinion and order gave Texas Gas authority to construct facilities which would enable it to deliver 51,000 Mcf of natural gas per day to American Louisiana at a proposed connecting point with the latter's system in Kentucky. American Louisiana proposes to deliver 200,000 Mcf per day of its initial capacity to Michigan Consolidated Gas Company and the remaining 100,000 Mcf to Michigan Wisconsin Pipe Line Company.[1] That gas would be added to the present supplies of those companies and sold and resold in their respective territories which cover in part the states of Iowa, Missouri, Wisconsin and Michigan.

The petitioner, Panhandle, is a pipeline owner and operator but, with the exception of Michigan Consolidated, does not serve any of the distributing companies or communities which will receive gas from American Louisiana. Panhandle was permitted to intervene in the proceeding below by the Commission and, as has been indicated, filed in this court its petition to review the Commission's above described opinion and order.

The fact that Panhandle was allowed to intervene of itself "shall not be construed as recognition by the Commission that such intervener might be aggrieved by any order of the Commission in such proceeding." F.P.C.Rules of Practice and Procedure, 18 C.F.R. Section 1.1(f) (13). Under Section 19(b) of the Act[2] petitioner must be "aggrieved by an order issued by the Commission" to entitle it to seek review of the order.

Panhandle maintains that in its petition for review it expressly alleges and shows that it is an aggrieved party. In two places of that petition it does state flatly that it is aggrieved by the order and opinion. However in its detailed exposition of the situation about

1. The applications of Michigan Wisconsin and Michigan Consolidated to enable them to receive and deliver such gas were, by the order of the Commission under review, expressly reserved for further disposition.

2. 15 U.S.C.A. § 717r(b).

which it complains no factual allegations are given which support the contention that it is aggrieved. The naked assertion is not enough. Interstate Electric, Inc., v. Federal Power Commission, 9 Cir., 1947, 164 F.2d 485; United States Cane Sugar Refiners' Ass'n v. McNutt, 2 Cir., 1943, 138 F.2d 116; Pittsburgh Radio Supply House v. Federal Communications Commission, 1938, 69 App.D.C. 22, 98 F.2d 303; cf. National Coal Ass'n v. Federal Power Commission, 1951, 89 U.S.App.D.C. 135, 191 F.2d 462; National Broadcasting Co. v. Federal Communications Commission, 1942, 76 U.S. App.D.C. 238, 132 F.2d 545, affirmed 1943, 319 U.S. 239, 63 S.Ct. 1035, 87 L.Ed. 1374.

 Panhandle says it is a competitor of American Louisiana, Michigan Consolidated, Michigan Wisconsin and Texas Gas. Whether or not it is a competitor of these companies for the present restricted market in the states of Michigan and Wisconsin is beside the point. There exists in that area "a crying demand" for additional quantities of gas. This can hardly be disputed.[3] American Louisiana and Texas Gas propose to build a pipeline in order to supply that demand. Panhandle filed no competitive application in this proceeding. It has evinced no interest in trying to take care of the substantial increased needs which are the basis for the certificates of convenience and necessity issued by the Commission.

The only gas supplied by Panhandle to any of the distributing companies who will obtain gas from the American Louisiana project is to Michigan Consolidated. Panhandle, however, has been actually seeking to reduce the quantity of gas it furnishes Michigan Consolidated. The Commission denied its application to this effect. On review we remanded the case to the Commission for reconsideration of Panhandle's application. Panhandle Eastern Pipe Line Co. v. Federal Power Commission, 3 Cir., 1953, 204 F.2d 925.[4] That proceeding which has been combined with Panhandle's application for equitable distribution of its capacity among customers (Commission order of February 18, 1954, 19 Fed.Reg. 1071–73) has been heard and is awaiting decision. Whatever may be the outcome of Panhandle's effort to obtain authority for reduction of its supply of gas to Michigan Consolidated, the gas to be delivered to that concern by American Louisiana is not in displacement of any part of its Panhandle allotment but over and above it in order to provide for the increased requirements of the Michigan consolidated territory.[5]

3. The Commission stated in its opinion:
"* * * the present supply available for resale from all sources aggregates 156,950,000 Mcf annually. There can be no question but that this quantity is clearly inadequate; not only has this Commission found it necessary to restrict the growth of the load through the tariff of Michigan Wisconsin, but the Michigan and Wisconsin Commissions have found it necessary to impose stringent restrictions on the growth of load in their respective jurisdictions. * * *
"* * * It appears from the uncontradicted evidence in these proceedings that there is a crying demand for additional quantities of natural gas in the Michigan-Wisconsin area, which, if not satisfied by the American Louisiana project, may not be satisfied for a considerable period of time."

4. See also Panhandle Eastern Pipe Line Co. v. Federal Power Commission, 3 Cir., 1953, 204 F.2d 675; Michigan Consolidated Gas Co. v. Federal Power Commission, 3 Cir., 1953, 203 F.2d 895; Federal Power Commission v. Panhandle Eastern Pipe Line Co., 1949, 337 U.S. 498, 69 S.Ct. 1251, 93 L.Ed. 1499.

5. Without any factual allegation in the petition, Panhandle contends that if the proposed pipeline were constructed Michigan Consolidated might eventually purchase all its supply from American Louisiana. There is nothing before us giving the slightest support to the suggestion that Michigan Consolidated is not bound to accept its quota of gas from Panhandle; certainly no implication that it could refuse delivery from Panhandle without the authority of the Commission. Beyond that the case is barren of proof that

Panhandle makes no offer of facts in its petition for review that would even tend to support any allegation that it is a competitor of American Louisiana, Michigan Consolidated, Michigan Wisconsin and Texas Gas for the unsupplied market. It participated fully in the exhaustive hearings and arguments below. Thereafter the Commission found:

"Panhandle Eastern Pipe Line Company, which company also serves Michigan Consolidated, has intervened in opposition to the granting of the application, alleging competition. We do not find, however, any proposal by Panhandle to meet additional needs of Michigan Consolidated or of the other customers of Michigan Wisconsin. Accordingly, we do not see wherein Panhandle may be aggrieved by the granting of a certificate to American Louisiana."

We are entirely satisfied that on the facts the above findings of the Commission were justified.

In addition to the unwarranted allegation of competition, Panhandle alleges that it "sells to Texas Gas approximately 18,000 Mcf of gas per day" and that "there is presently pending before the Commission a decision of one of its Trial Examiners permitting Panhandle to discontinue this service." We are not informed by the petition how Panhandle is aggrieved in this regard, nor is any aggrievement perceptible. Panhandle intimates that despite its wish to end its gas deliveries to Texas it might be forced to continue them so that Texas may meet its obligation of 51,000 Mcf per day to American Louisiana. The order of the Commission contains no such provision expressly or impliedly.

The petition for review will be dismissed.

Michigan Consolidated will attempt to cut off Panhandle as a supplier. The threat of injury contemplated by the Act "must be something more than * * * highly speculative." National Broadcasting

Co. v. Federal Communications Commission, supra, 132 F.2d at page 548. See United States Cane Sugar Refiners' Ass'n v. McNutt, supra.