PEOPLE OF the STATE OF CALIFOR-
NIA and Public Utilities Commission
of the State of California, Petitioners,

v.

FEDERAL POWER COMMISSION,
Respondent.

SOUTHERN CALIFORNIA GAS COM-
PANY and Southern Counties Gas Com-
pany of California, Petitioners,

v.

FEDERAL POWER COMMISSION,
Respondent.

Nos. 19647, 19664.

United States Court of Appeals
Ninth Circuit.

Nov. 9, 1965.

Richard E. Tuttle, Chief Counsel, J. Calvin Simpson, Senior Counsel, John T. Murphy, Associate Counsel, San Francisco, Cal., for petitioners State of California and P. U. C. of California.

Richard A. Solomon, Gen. Counsel, Howard E. Wahrenbrock, Solicitor, Robert L. Russell, Asst. Gen. Counsel, Leonard Poryles, atty., all with Fed. Power Comm., Washington, D. C., for respondent Federal Power Comm.

Homer J. Penn, Houston, Tex., W. T. Kilbourne, II, Washington, D. C., for intervenor Superior Oil Co.

Oliver L. Stone, Thomas G. Johnson, New York City, for intervenor Shell Oil Co.

Jessee H. Foster, Jr., Albert C. McClain, Houston, Tex., for intervenor Humble Oil & Refining Co.

John Ormasa, Richmond, Cal., K. R. Edsall, Milford Springer, Robert M. Olson, Los Angeles, Cal., J. David Mann, Jr., John E. Holtzinger, Jr., Frederick Moring, Morgan, Lewis & Bockius, Washington, D. C., for petitioners Southern California Gas Co. and Southern Counties Gas Co. of California.

Before MERRILL and DUNIWAY, Circuit Judges, and MATHES, District Judge.

DUNIWAY, Circuit Judge:

This case arises from the grant by the Federal Power Commission of a certificate of public convenience and necessity to certain producers of natural gas, pursuant to section 7(e) of the Natural Gas Act, 15 U.S.C. § 717f(e), which provides in pertinent part:

> [A] certificate shall be issued to any qualified applicant therefor * * * if it is found that * * * the proposed * * * sale * * * is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied. The Commission shall have the power to attach to the issuance of the certificate and to the exercise of the rights granted thereunder such reasonable terms and conditions as the public convenience and necessity may require.

The essential facts, summarily stated, follow. Three gas producers—Humble Oil & Ref. Co., Shell Oil Co., and Superior Oil Co.—brought gas wells into production in a formerly undeveloped portion of the "Four Corners" producing area, a region encompassing contiguous portions of northeast Arizona, northwest New Mexico, southwest Colorado, and southeast Utah. They applied for permanent certificates of public convenience and necessity under section 7(e), which would allow them to sell the gas in interstate commerce at their contract rate of 17.7 cents per thousand cubic feet (Mcf.);

this price is identical with that approved for a nearby field in the prior separate "Aneth" certification proceeding. (El Paso Natural Gas Co., 1960, 23 F.P.C. 370, aff'd sub nom. Texaco, Inc. v. FPC, 5 Cir., 1961, 290 F.2d 149.)

The Trial Examiner found that the certificate should be issued on condition that the price not exceed 13 cents per Mcf., which he found to be the prevailing price in the San Juan Basin of New Mexico, an older producing area about 75 miles away which had served as the point of reference for the certificated price in Aneth. The Commission reversed in a 3–2 decision, finding that the gas subject to the instant sale was more similar to Aneth gas than to San Juan gas and that the price line to be observed was that of Aneth rather than that of San Juan. The State of California and two California gas distributing companies (Southern California Gas Company and Southern Counties Gas Company of California), intervenors in the original proceeding, now petition this court to review and set aside the Commission's resulting order which granted the certificate without price condition.

The principal argument seems to be that the Commission erred in granting an unconditioned certificate because the certificated price was established by reference to a prior "isolated and insignificant" sale at a now "discredited" price. Two of the producers, Superior and Humble, assert that this court has no jurisdiction to hear a petition for review by the intervenors because (1) respondents failed to present their objections in their Applications for Rehearing and consequently are barred from asserting them here, and (2) they were not "aggrieved" within the meaning of section 19 of the Act (15 U.S.C. § 717r).

1. JURISDICTION.[1]
A. *Waiver of objection by failure to urge it in application for rehearing.*

Superior asserts that "the actual contentions on review" are "charges of abuse of discretion, arbitrary and capricious action and unreasonableness by the Commission in its decision making process" and that the petitioners failed to raise these contentions in its Application for Rehearing, and concludes that they therefore cannot be raised in this petition for review. In support it cites many cases and section 19 of the Natural Gas Act, which provides in pertinent part that:

"[§ 19(a)] Any person * * * aggrieved by an order issued by the Commission * * * may apply for a rehearing * * *. The application for rehearing shall set forth specifically the ground or grounds upon which such application is based. * * * No proceeding to review any order of the Commission shall be brought by any person unless such person shall have made application to the Commission for a rehearing thereon. * * *"

"[§ 19(b)] Any party * * * aggrieved * * * may obtain a review of such order in the circuit court of appeals of the United States * * *. No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure so to do. * * *"

The argument sacrifices substance to form, and to a form created by respondents rather than by the statute. The errors asserted here were urged in the application for rehearing. The Commission was not misled; its order denying rehearing is responsive to the errors petitioners assert. Hence the purpose of the rule is satisfied. Cf. City of Pittsburgh v. FPC, 1956, 99 U.S.App.D.C. 113, 237 F.2d 741. Respondents term those allegations of error "charges of abuse of

---

1. We note that neither the Commission nor Shell raises jurisdictional questions, and that the Humble brief merely "in the interest of brevity and to avoid undue repetition * * * adopts Superior's brief."

discretion, arbitrary and capricious action and unreasonableness" and then claim that because petitioners did not, by proper phrasing, anticipate this magical conversion they are raising new objections which, under section 19, are inadmissible. This is a bootstrap argument supported neither by analysis of the actual language in the applications for rehearing nor by the facts or holdings of decisional law.[2]

### B. Are petitioners "aggrieved" under section 19?

Superior makes a *de minimis* argument here, claiming that the sale in question is so small compared with the total volume sold to either California consumers or Southern Counties' and Southern California's customers that neither sustained the "present immediate legal economic injury" which it claims is necessary to constitute "aggrievement." A subsidiary argument is that the level of possible future sales cannot be considered—indeed, respondent asserts that "the amount of gas involved * * * is small and will have no present effect and probably no future effect on * * consumers of gas in California." It concludes that, even assuming an abuse of discretion by the Commission, petitioners here are not sufficiently aggrieved to have standing to object.

This contention is utterly without merit. To the extent that it raises a *de minimis* argument, the facts of the decided cases are squarely against it. E. g., Lynchburg Gas Co. v. FPC, 1964, 119 U.S.App.D.C. 23, 336 F.2d 942; Public Serv. Comm'n v. FPC, 3 Cir., 1958, 257 F.2d 717, aff'd on other grounds sub nom. Atlantic Ref. Co. v. Public Serv. Comm'n, 1959, 360 U.S. 378, 79 S.Ct. 1246, 3 L.Ed.2d 1312; City of Pittsburgh v. FPC, 1956, 99 U.S.App.D.C. 113, 237 F.2d 741; cf. FCC v. Sanders Bros. Radio Station, 1940, 309 U.S. 470, 60 S.Ct. 693, 84 L.Ed. 869; Associated Indus. v. Ickes, 2 Cir., 1943, 134 F.2d 694, vacated as moot, 1943, 320 U.S. 707, 64 S.Ct. 74, 88 L.Ed. 414. Other cases holding parties not aggrieved are distinguishable as involving no present injury and no established probability of future injury, see Eccles v. Peoples Bank, 1948, 333 U.S. 426, 68 S.Ct. 641, 92 L.Ed. 784; Cincinnati Gas & Elec. Co. v. FPC, 1957, 101 U.S.App.D.C. 1, 246 F.2d 688, or no factual showing of aggrievement, Panhandle Eastern Pipe Line Co. v. FPC, 3 Cir., 1955, 219 F.2d 729. In citing Helvering v. Gowran, 1937, 302 U.S. 238, 58 S.Ct. 154, 82 L.Ed. 224 and SEC v. Chenery Corp., 1943, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626, for the proposition that, even assuming an abuse of discretion, the FPC's decision should be affirmed because it reached the correct result, respondent Superior begs the very question to be decided on the merits.

The petitioners are "aggrieved" within the meaning of section 19. Not only is there a real and present impact, however slight, but the probable future impact of expanded production and sales from this area is substantial. This is the first jurisdictional sale from Arizona to come before the Commission in a perma-

---

2. None of the cases that respondent cites is in point. Some involve attempted collateral attack when the time for direct review or appeal has expired. FPC v. Colorado Interstate Gas Co., 1955, 348 U.S. 492, 75 S.Ct. 467, 99 L.Ed. 583; Memphis Light & Gas Co. v. FPC, 1957, 100 U.S.App.D.C. 205, 243 F.2d 628. Some are cases where a point asserted on review was not raised at all before the Commission, United States v. L. A. Tucker Truck Lines, Inc., 1952, 344 U.S. 33, 37, 73 S.Ct. 67, 97 L.Ed. 54; Panhandle Eastern Pipe Line Co. v. FPC, 1945, 324 U.S. 635, 65 S.Ct. 821, 89 L.Ed. 1241, or was not raised at all in an application for rehearing, Panhandle Eastern Pipe Line Co. v. FPC, supra; Street v. FPC, 1960, 107 U.S.App.D.C. 327, 277 F.2d 357. Some involve failure to apply for rehearing, or to seek review, or to appeal, within a prescribed time limit. Pan Am. Petroleum Corp. v. FPC, 10 Cir., 1959, 268 F.2d 827, 830; Bradley v. Pace, 1950, 87 U.S.App.D.C. 11, 183 F.2d 806; Michigan Consol. Gas Co. v. FPC, 1948, 83 U.S.App.D.C. 395, 167 F.2d 264. Dayton Power & Light Co. v. FPC, 1957, 102 U.S.App.D.C. 164, 251 F.2d 875 also involved a time limit but its holding, if relevant at all, is contrary to respondent's contention.

nent certification proceeding, exploration in the area has been increasing and the Commission itself noted that "while the volumes here involved are small, the case has an importance beyond its present circumstances in its effect on the development of a new and emerging gas supply area." Opinion No. 434, 32 F.P.C. 41 (1964). And while the Commission claims that the price line established in this case will not necessarily establish a precedent for future sales within the area, the dissenting Commissioners remind us that "the pattern is universal—in every producing area of the country. When the Commission determines a ceiling price for an area, that becomes the base price at which contracts are executed." Id. at 42. That future impact can constitute aggrievement in these circumstances is established, see Lynchburg Gas Co. v. FPC, Public Serv. Comm'n v. FPC, and City of Pittsburgh v. FPC, supra. Moreover, as the District of Columbia Circuit noted in Lynchburg, "as a practical matter the time for review is now * * *." 336 F.2d at 946.

## 2. THE MERITS.

### A. *Fact-finding by the Commission.*

 Petitioners apparently albeit weakly contest the validity of the Commission's findings of fact with reference to the comparability of the gas here sold to Aneth gas, and of the contracts here involved to Aneth contracts. The Presiding Examiner, in determining appropriateness of the contract price, rejected the analogy of Aneth sales, finding them to be not comparable terms of type, in quality, or volume of gas sold. Instead, he found that the gas sales here involved were more comparable to San Juan gas sales, and accordingly held that the San Juan price should be used here. The Commission majority reversed that finding, holding Aneth area sales to be the more comparable. Its conclusion, if supported by substantial evidence in the record, must stand, Natural Gas Act § 19(b), 15 U.S.C. § 717r(b). Here such substantial evidence exists.

### B. *Did the Commission err in using the Aneth price in determining the price "line"?*

Petitioners raise many objections to the method used here to ascertain the appropriate price line. They say that the Commission erred in holding immaterial the fact that the case upon which it relied would probably not be decided the same way under modern regulatory principles; in relying upon a price line established by "an isolated and insignificant sale"; in relying upon judicial affirmance of a prior price certificate as authority for the present certification; in violating the "in-line" pricing principles of CATCO (Atlantic Ref. Co. v. Public Serv. Comm'n, 1959, 360 U.S. 378, 79 S.Ct. 1246, 3 L.Ed.2d 1312); and in failing to protect the consumer by insertion of a price condition in the permanent certificates it issued. All of these assertions raise but one basic question: Did the Commission abuse its discretion when, in establishing a price line with which it might compare the contract price in the instant sale, it used a price certificated in a prior case which probably would not be decided in the same way under current regulatory principles?

Petitioners contend that Aneth is an invalid point of reference in determining the proper "in-line" price for the sale in issue, for the reasons that (1) it was determined by merely adding to the then-prevailing San Juan price an average cost of processing, a practice later abandoned by the Commission, see Standard Oil of California, 1962, 27 F.P.C. 1153, affirmed on this ground but remanded on other grounds sub nom. California Oil Co. v. FPC, 10 Cir., 1963, 315 F.2d 652, 659; Skelly Oil Co., 1962, 28 F.P.C. 401, 411, aff'd sub nom. Public Serv. Comm'n v. FCP, 1964, 117 U.S.App.D.C. 287, 329 F.2d 242, cert. denied, Prado Oil & Gas Co. v. FPC, 1964, 377 U.S. 963, 84 S.Ct. 1644, 12 L.Ed.2d 735, and (2) the very cost data incorporated in the Aneth price was improperly determined in that it included tax cost elements not actually

paid and later held, in El Paso Natural Gas Co. v. FPC, 5 Cir., 1960, 281 F.2d 567, cert. denied State of Cal. v. FPC, 1961, 366 U.S. 912, 81 S.Ct. 1083, 6 L.Ed. 2d 236, to have been improperly included in El Paso's cost of service (which apparently included the processing cost used in Aneth).

The Commission replies that (1) it "followed the teachings of CATCO as expounded by" this court in the UGI case (United Gas Improvement Co. v. FPC, 9 Cir., 1960, 283 F.2d 817, cert. denied sub nom. Superior Oil Co. v. United Gas Improvement Co., 1961, 365 U.S. 879, 81 S.Ct. 1030, 6 L.Ed.2d 191) in giving full consideration to all factors here involved and in doing so with full awareness of the importance of controlling prices; (2) Aneth is a valid reference point in that the price there allowed is not "suspect," "under * * * a cloud," or under court or FPC review, under the principles announced in UGI, and did establish a price for substantial quantities of gas moving in interstate commerce, and that in fact the UGI case means that the Commission *must* look to Aneth. The Commission refuses to discuss "the merits of the Aneth price or how that case was decided or how it would be decided" today, relying only on the allegation that the price there approved "reflect[s] current conditions in the industry" and meets the UGI "substantial amount * * in interstate commerce" test.

The appropriate starting point is Atlantic Ref. Co. v. Public Serv. Comm'n, 1959, 360 U.S. 378, 79 S.Ct. 1246, 3 L.Ed. 2d 1312, commonly known as the "Catco" case. That case proceeded on the premises that "the purpose of the Natural Gas Act was to underwrite just and reasonable rates to the consumers of natural gas," that "the Act was so framed as to afford consumers a complete, permanent and effective bond of protection from excessive rates and charges," and, quoting from the original Act, that "the in-

tention of Congress [was] that natural gas shall be sold * * * at the lowest possible reasonable rate consistent with the maintenance of adequate service in the public interest. 52 Stat. 825." Id. at 388, 79 S.Ct. at 1253. The Court noted that "the initial certificating of a proposal under § 7(e) * * * becomes crucial * * * because the delay incident to determination in § 5 proceedings through which initial certificated rates are reviewable appears nigh interminable," id. at 389, 79 S.Ct. at 1254 and went on to hold that

> "Where the proposed price is not in keeping with the public interest because it is out of line or because its approval might result in a triggering of general price rises * * * the Commission in the exercise of its discretion might attach such conditions as it believes necessary." Id. at 391, 79 S.Ct. at 1255.[3]

The "hold the line" rationale of Catco was first implemented by this circuit in UGI, supra. There this court said that where "the proposed initial price signals the existence" of "a situation not in keeping with the public interest" because it is out of line, or might result in triggering general price rises, "ordinarily * * * a certificate should not be issued or if issued appropriate conditions should be attached." 283 F.2d at 821. We held that the Commission must find both that the initial rates are not out of line (or, if out of line, that the public convenience and necessity of certifying at those rates has been established) and that their approval will not result in triggering of general price rises or increasing the applicants' existing rates. Ibid. (The Commission did not find any danger of "triggering" here.) Whether the proposed price is "in line" may be determined by reference to "relevant existing producer rates under which substantial amounts of natural gas move in interstate commerce." "Relevancy" is deter-

---

3. The Court also noted that "The price certificated will in effect become the floor for future contracts in the area," id. at 390, 79 S.Ct. 1254, lending weight to the quotation from the dissenting Commissioners in the instant case, see p. 20 supra.

mined by the degree to which the prices sought to be compared are comparable in terms of production area, gas reserves and future potentials, quality, and "other principal features of the contracts" including "facilities to be provided and other services to be rendered * * *." However, "factors such as relative production costs which are not reflected in specific terms of the contract" need not be considered because of the complexities of proof which that would necessitate, and which would defeat Catco's purpose of providing "simple, direct and effective stopgap protection for the consuming public." Id. at 823. The decision went on to hold that the relevant price line need not necessarily accord with the pre-Catco line; that relevant prices need not have been established in proceedings subjected to Catco standards (id. 823–824); and that prices which are "suspect" or "under * * * a cloud," because under court or Commission review or from areas in which a substantial number of similar contracts are under such review or established in proceedings in which the present petitioner was denied the right to participate and that denial is concurrently being contested in the courts, cannot be "relevant." Id. at 824–825.

Neither Catco nor UGI directly disposes of the instant case; only UGI considered even indirectly the question presented here. But the result of applying those cases seems fairly clear. Neither the Supreme Court in Catco, nor this court in UGI, gave much weight to the "expertise" of the Commission. Perhaps this is because the Supreme Court felt that the Commission, up to that time, had abdicated a duty to protect the consumer imposed upon it by section 7. UGI was one of the first post-Catco cases, and this court evidently felt that the Commission was still not fully following the mandate of Catco. Other courts seem to have had the same feeling. (See Public Serv. Comm'n v. FPC, 1959, 361 U.S. 195, 80 S.Ct. 292, 4 L.Ed.2d 237, reversing United Gas Improvement Co. v. FPC, 3 Cir., 1959, 269 F.2d 865; Public Serv. Comm'n v. FPC, 1960, 109 U.S.App.D.C. 292, 287 F.2d 146, cert. denied sub nom. Hope Natural Gas Co. v. Public Serv. Comm'n, 1961, 365 U.S. 880 and 882, 81 S.Ct. 1030, 1031, 6 L.Ed.2d 192; United Gas Improvement Co. v. FPC, 10 Cir., 1961, 287 F.2d 159; United Gas Improvement Co. v. FPC, 5 Cir., 1961, 290 F.2d 133, cert. denied sub nom., Sun Oil Co. v. United Gas Improvement Co., 1961, 368 U.S. 823, 82 S.Ct. 41, 7 L.Ed.2d 27; United Gas Improvement Co. v. FPC, 5 Cir., 1961, 290 F.2d 147, cert. denied sub nom., Superior Oil Co. v. United Gas Improvement Co., 1961, 366 U.S. 965, 81 S. Ct. 1926, 6 L.Ed.2d 1255.)

Considerable water has gone over the dam since that time, and the Commission is now, as evidenced by the opinions of the Commission in this case, fully aware of the duty that Catco imposes on it to protect the consumer. Its actions in other matters evidence the same awareness. (General Policy Statement No. 61–1, Sec. 256, 18 C.F.R. 2.56, amended 26 F.P.C. 661 (1961), 28 F.P.C. 441 (1962), 29 F.P.C. 590 (1963), 30 F.P.C. 1435 (1963); FPC Annual Report, 1964, p. 106).[4] As the Commission states in its brief, after several years of its intensive

4. In a footnote to its brief, the Commission says:

"A quick check has revealed the following (it should be noted that a large number of sales have been consolidated for decision in each case):
Panhandle Eastern Pipe Line Co., et al., 27 FPC 35 (conditioned certificates covering sales in Oklahoma from contract prices of 17¢ to 15¢); Continental Oil Co., et al. (CATCO), 27 FPC 96 (conditioned certificates covering sales in Southern Louisiana from contract prices of 21.4¢ to 18.5¢); Michigan Wisconsin Pipe Line Co., et al., 27 FPC 449 (conditioned certificates covering sales in Oklahoma from contract prices of 19.5¢ to 17¢ and 15¢); The Ohio Oil Co., et al., 27 FPC 551 (conditioned certificates covering sales in Northern Louisiana from contract prices of 18.5¢ to 17¢ and 16.5¢), affirmed Atlantic Refining Co. v. F.P.C., 115 U.S.App. D.C. 26, 316 F.2d 677; American Louisiana Pipe Line Co., et al., 27 FPC 792 (conditioned certificates covering sales in Northern Louisiana from contract prices of 18.25¢ to 17¢); El Paso Natu-

efforts the national average price for gas levelled off, see FPC Ann.Rep., 1964, at 106, and even appears to have declined, see U.S. Dep't of Labor Wholesale Prices and Price Indexes, B.L.S. Commodity Code No. 0531–01.03, FPC Form No. 2. We think, then, that in view of the many "in line pricing" cases that the Commission has decided, and of the attitude that it has shown in deciding them, we owe it the same deference to its expertise that courts generally owe to the specialized boards and commissions created by the Congress to deal with complex and difficult problems in the field of economic regulation.

 Here, after careful consideration, the Commission has decided that the Aneth price is the line that it will follow in these cases. We cannot say that it abused its discretion in doing so. No doubt there are many certificated prices —some under unconditional certificates and others (like the Aneth price) conditioned, some established in contested proceedings and others not contested [5]— which might be different, and lower, if the Commission were passing on them under section 7 today. But this, we think, does not *require*, although it may *permit*, the Commission to disregard them or to give little weight to them in deciding what is an appropriate price line to which to refer. The Aneth price is a "relevant existing [price] * * * under which substantial amounts of natural gas move in interstate commerce"

ral Gas Co., et al., 27 FPC 1134 (conditioned certificates covering sales in Wyoming from contract prices of 17.5¢ to 15.384¢); Standard Oil Company of California, et al., 27 FPC 1153 (conditioned certificates covering sales in Utah from contract prices of 18.5¢ to 15.-384¢), affirmed sub nom. California Oil Co. v. F.P.C., 315 F.2d 652 (CAIO); Skelly Oil Co., et al., 28 FPC 401 (conditioned certificates covering sales in Texas Railroad District No. 4 from contract prices of 18¢ to 15¢), affirmed sub nom. P.S.C. of New York v. F.P.C., 117 U.S.App.D.C. 287, 329 F.2d 242 (CADC), certiorari denied, 377 U.S. 963, 84 S.Ct. 1644, 12 L.Ed.2d 735. Texaco Seaboard Inc., et al., 29 FPC 593 (conditioned certificates covering sales in Texas Railroad Districts 3 and 4 from contract prices of 20¢ and 18.5¢ to 16¢ and 15¢); Jake L. Hamon, 29 FPC 784 (conditioned certificates covering sales in Texas Railroad District No. 4 from contract prices of 18.23¢ to 15¢); El Paso Natural Gas Co., et al., 29 FPC 1175 (conditioned certificates covering sales in Panhandle area Oklahoma from contract prices of 21¢ to 17¢); Placid Oil Co., et al., 30 FPC 283 (conditioned certificates covering sales in Southern Louisiana from contract prices ranging to 23.8¢, including tax reimbursement, to 20¢ and contract prices for gas not subject to taxes from 21.4¢ to 18.5¢), reversed Callery Properties, Inc. v. F.P.C., 335 F.2d 1004 (CA 5), petition for certiorari pending, F.P.C. v. Callery Properties, Inc., No. 756, O.T.1964; United Gas Pipe Line Co., et al., 30 FPC 329 (conditioned certificates covering sales in off-shore Louisiana from contract prices of 24.8¢ to 20.0¢, including tax reimbursement); Hassie Hunt Trust, et al., 30 FPC 1438 (conditioned certificates covering sales in Texas Railroad Districts 2, 3 and 4 from contract prices of 20¢ to 16¢ and 15¢), petition for review pending, Margaret H. Hill v. F.P.C., CA 5 No. 21286; Amerada Petroleum Corp., et al., Opinion No. 422, 31 FPC (issued March 23, 1964) (conditioned certificates covering sales in Texas Railroad District 4 from contract prices ranging to 19.795¢ to 16¢), petitions for review pending in five Circuits, the first being Sunray DX Oil Co. v. F.P.C., CA 10 No. 7781; Union Texas Petroleum Co. et al., Opinion No. 436, 31 FPC (issued July 23, 1964) (conditioned certificates covering sales in Southern Louisiana from contract prices ranging to 23.675¢ to 20¢), petitions for review pending in four Circuits, the first being Pan American Petroleum Corp. v. F.P.C., CA 10 No. 7912; Sun Oil Co., et al., Opinion No. 445, 32 FPC (issued October 26, 1964) (conditioned certificates covering sales in Mississippi from contract prices ranging to 22.87¢ to 20.6¢); petitions for review pending, General American Oil Co. v. F.P.C., CA 5 No. 22259 and The California Co. v. F.P.C., CA 9 No. 19894; Edwin L. Cox, et al., Opinion No. 446, 32 FPC (issued November 17, 1964) (conditioned certificates covering sales in Oklahoma from 17.9¢ to 15¢)."

5. The Aneth price condition reduced the contract price of 20¢ to 17.7¢.

(UGI, supra, 283 F.2d at 823). It "per-tain[s] to gas production in the same or an analogous area and * * * other features of the contracts are fairly comparable" (ibid). It is not "suspect" or "under a cloud" as those terms are used in UGI. It "reflect[s] current conditions in the industry" (id. at 824). It was arrived at by the Commission under standards imposed by Catco, and affirmed by the Court of Appeals under the same standards. Thus, in a sense, it is less "suspect," less "under a cloud" (using those terms in a very broad sense) than are certificated prices which, because they are pre-Catco, were never scrutinized by the Commission. Yet in UGI we held that the Commission is not bound to disregard such prices. Under these circumstances, even if we might agree with the dissenters were we the Commission, as a reviewing court we cannot say that the Commission abused its discretion.

Affirmed.