**FEDERAL POWER COMMISSION et al.,**
Appellants,

v.

**UNION PRODUCING COMPANY,**
Appellee.

Nos. 12583, 12584.

United States Court of Appeals
District of Columbia Circuit.
Argued June 30, 1955.
Decided Jan. 30, 1956.

Petition for Rehearing Denied
Feb. 28, 1956.

Wilbur K. Miller, Circuit Judge, dissented.

See also 127 F.Supp. 88.

Mr. William J. Grove, Asst. Gen. Counsel, Federal Power Commission, with whom Messrs. Willard W. Gatchell, Gen. Counsel, Federal Power Commission, and Robert L. Russell, Atty., Federal Power Commission, were on the brief, for appellants.

Mr. Thomas Fletcher, of the bar of the Supreme Court of Texas, Houston, Tex., pro hac vice, by special leave of Court, with whom Messrs. C. Huffman Lewis, Shreveport, La., and Morton E. Yohalem, Washington, D. C., were on the brief, for appellee.

Before WILBUR K. MILLER, WASHINGTON and BASTIAN, Circuit Judges.

BASTIAN, Circuit Judge.

The defendants in the trial court were the Federal Power Commission and its members, to whom Congress has delegated the administration of the Natural Gas Act. 52 Stat. 821, 15 U.S.C.A. § 717.

In its complaint in the trial court Union Producing Company, engaged in the production and gathering of oil and natural gas, claims that the Natural Gas Act is inapplicable to its wellhead sales of natural gas and sales of natural gas for processing, and seeks to enjoin the enforcement of certain regulations promulgated by the defendant Commission and now designated as Order 174-B,[1] requiring the filing of rate schedules and applications for certificates of public convenience and necessity. The company alleges that this order results in an arbitrary and unreasonable interference with its existing contractual relationships, and impairs the obligation of contracts in violation of the Constitution, depriving the company of due process of law in violation of the Fifth Amendment and contrary to the provisions of the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq.

More specifically, the company alleges that it presently has a large number of sales contracts involving a substantial dollar aggregate and, as a producer, is constantly bringing in new fields and wells which, in turn, involve new sales of gas produced. The company also al-

1. Order No. 174–B is entitled "Order amending Order Prescribing Regulations Governing the Filing of Rate Schedules and Applications for Certificates of Public Convenience and Necessity by Producers and Gatherers of Natural Gas Which Are Also Natural Gas Companies, Waiving Accounting Requirements, and Relating to Automatic Escalation and Favored Nation Clauses in Contracts for the Sale of Natural Gas by Such Producers and Gatherers."

leges that under compulsion of Order 174-B it is subjected to loss of customers and other economic sanctions already incurred and threatening to arise in greater measure from prospective customers declining to deal with it; that it faces the problem of third party contractors refusing to pay the increased prices called for by contract and refusing to make reimbursement of taxes advanced by the company under contract and from the loss of benefit of escalation provisions in existing contracts, as well as the threatened inability to dispose of future supplies of natural gas produced by it. Furthermore, the company states that failure to comply with the newly promulgated regulations of the Commission will subject it unduly to the risk and threat of severe fines and penalties provided by the Natural Gas Act.

The entire controversy in these cases revolves around the decision of the Supreme Court in Phillips Petroleum Co. v. State of Wisconsin, 1954, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035, affirming the decision of this court in State of Wisconsin v. Federal Power Commission, 92 U.S.App.D.C. 284, 205 F.2d 706, which reversed the decision of the Federal Power Commission In the Matter of Phillips Petroleum Co., 1951, 10 F.P.C. 246, 90 P.U.R.,N.S., 325. The series of orders designated as Order Nos. 174, 174-A and 174-B stem directly from the decision in the Phillips case, supra, and were promulgated by the Commission to adapt the Commission's rules and regulations to that decision. Following the decision of the Supreme Court on June 7, 1954, the Commission, on July 16, 1954, issued Order No. 174 [2] prescribing procedural rules of general applicability to those persons, "independent producers and gatherers," determined by that decision to be within the purview of the Natural Gas Act and subject to the jurisdiction of the Commission. The rules and regulations comprising the series of 174-Orders amend the Commission's rules and regulations and provide means by which a "natural gas company" in the producing and gathering area of the business, as contrasted to an interstate pipeline "natural gas company," could comply with the requirements of the Natural Gas Act.

The provisions of the Natural Gas Act, which the 174-Orders were designed to implement, are embodied in Sections 4, 7 and 8 of the Act. Section 4(c) requires every natural gas company to file with the Commission schedules of its rates and charges in such form as the Commission may designate and prescribe in its regulations. Section 4(d) prohibits changes in rates except after 30 days' notice to the Commission and the public. Section 7(b) forbids the abandonment of facilities or service without the permission and approval of the Commission first being obtained. Section 7(c) prohibits engagement in operations subject to the Commission's jurisdiction unless a certificate of public convenience and necessity has been obtained from the Commission. Section 7(d) requires that applications for certificates be filed in such form, and notice thereof given, as the Commission may require. Section 8(a) authorizes the Commission to prescribe a system of accounts and classification of companies, and requires every natural gas company to conform its accounts thereto. Section 16 of the Act authorizes the Commission to prescribe such orders, rules and regulations as it finds necessary to carry out the provisions of the Natural Gas Act.

Order 174-B now embodies the effective rules and regulations applicable to rates and certificate application filings by "independent producers." Throughout the 174 series of orders the definition of "independent producers" has remained unchanged. Each order, in succession, has been made applicable to the operations and transactions conducted by an "independent producer" as of June

---

2. Order No. 174, 19 F.R. 4534, July 2, 1954, was superseded by Order No. 174-A, 19 F.R. 5081, August 12, 1954, which was later amended and restated as Order No. 174-B, 19 F.R. 8807, December 23, 1954.

7, 1954, the date of the Supreme Court decision in the Phillips case, and each order required rate and certificate application filings to be made with the Commission not later than December 1, 1954.

The company points out that except for a few isolated instances of state-controlled unitization, it sells natural gas at the wellhead or at the downstream side of a separator located adjacent to the wellhead; that it does not gather such gas but, rather, that the gathering is done by those who purchase from the company; that the company does not own any processing plants through which the gas may be processed or from which gas is sold by it, nor does it purchase natural gas from any other producer for resale or processing. Furthermore, the company alleges that it does not engage in interstate transportation of natural gas; that title to the gas passes at the point of delivery; that it has no control over the gas after delivery; and that it does not know what disposition is made by the purchaser after delivery. The company contends that since all its sales are made in the course of production and prior to gathering by third parties, it is not a natural gas company as defined in the Natural Gas Act.

The trial judge found in favor of the company, concluding that the suits might be maintained, granted a preliminary injunction, and denied the motion of the Government to dismiss. The court held in these cases that the remedy of injunction is available to the plaintiff company under the Administrative Procedure Act.

It appears from a reading of the record that a number of "gas-gathering" companies, uncertain as to their status under the new regulations, Orders 174, 174-A and 174-B, have taken advantage of the Commission's Rule, Section 1.7 (c),[3] and have filed petitions for a declaratory order to have their status determined.

■■ The statutory scheme in a judicial review of the Federal Power Commission action contemplates an initial decision by the agency, followed by court review. Reasons of uniformity of decision, based on the expertise of a specialized agency, underlie this scheme.

The company relies on Columbia Broadcasting System v. United States, 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563. However, this case did not involve the question of CBS' status. That was already clear. The relief asked by CBS was not the securing of a determination as to whether or not certain transactions (and CBS as a participant) were within the terms of the Federal Communications Commission regulations. CBS wanted a court ruling that the regulations in their entirety were outside the agency's statutory authority. The Supreme Court determined (1) that it was considering an "order" in that the rules and regulations in question impaired existing contracts and obligations, and (2) that these rules and regulations operated to control in advance the rights not only of licensees but also of others, the broadcasting networks. The only action remaining in the CBS case was the enforcement by the Commission of the regulations against a station licensee.

In the instant case, however, it seems to us that the real request of the company is to have particular transactions classified as outside the Act and the regulations. This cannot be done until the agency has passed on the question. Myers v. Bethlehem Shipbuilding Corp., 1938, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed.

3. Section 1.7(c) provides: "[Petitions] *For declaratory orders.* Petitions for the issuance in the discretion of the Commission, of a declaratory order to terminate a controversy or remove uncertainty, shall state clearly and concisely the controversy or uncertainty which is the subject of the petition, shall cite the statutory provision or other authority involved, shall include a complete statement of the facts and grounds prompting the petition, together with a full disclosure of petitioner's interest, and shall conform to the requirements of §§ 1.15 and 1.16." (18 CFR 1.7(c).)

**40**

638.[4] Where means are provided for obtaining administrative determination as to whether the plaintiff companies are subject to rules and regulations of the Commission, those means must be resorted to prior to judicial review. Certainly, we cannot assume that an exercise of those means would be a useless task, for that assumption would necessarily be pitched on a presumption that the Commission is derelict in its duties under the Constitution and the Natural Gas Act.

The company has not exhausted its administrative remedy. Its petitions before the Commission were chiefly directed to the order as a whole. It could not properly raise the question whether the order would apply to particular situations, except perhaps to show a need for clarification. The Commission took the view that such questions must wait. This was a reasonable attitude. A petition for declaratory ruling from the Commission (under Section 1.7(c) of the Rules) would seem to be the appropriate remedy. Union did not ask for this.

The company claims that its status has been erroneously predetermined. We think there is no showing that this is so. In any event, Eccles v. Peoples Bank, 1947, 333 U.S. 426, 434, 68 S.Ct. 641, 646, 92 L.Ed. 784, points out that:

> "Where administrative intention is expressed but has not yet come to fruition (Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 324, 56 S.Ct. 466, 472, 80 L.Ed. 688), or where that intention is unknown (Great Atlantic & Pacific Tea Co. v. Grosjean, 301 U.S. 412, 429, 430, 57 S.Ct. 772, 779, 81 L.Ed. 1193), we have held that the controversy is not yet ripe for equitable intervention."

As we hold that the suit must fail because the administrative remedies have not been exhausted and as the District Court thereby lacked jurisdiction over the subject matter, it is not necessary under the circumstances of this case that we pass on the claim of "irreparable injury."

In view of the foregoing we must reverse and remand the case with directions to vacate the preliminary injunction and to dismiss the complaint.

Reversed and remanded.

WILBUR K. MILLER, Circuit Judge, dissents.

4. Cf. Aircraft & Diesel Equipment Corp. v. Hirsch, 1946, 331 U.S. 752, 67 S.Ct. 1493,