243 F.2d 628
 100 U.S.App.D.C. 205
 MEMPHIS LIGHT, GAS AND WATER DIVISION, Petitioner,
v.
FEDERAL POWER COMMISSION, Respondent,
American Louisiana Pipe Line Company and Texas Gas
Transmission Corporation, Intervenors.
PANHANDLE EASTERN PIPE LINE COMPANY, Petitioner,
v.
FEDERAL POWER COMMISSION, Respondent,
American Louisiana Pipe Line Company and Texas Gas
Transmission Corporation, Intervenors.
 No. 12837, 12840.
 United States Court of Appeals, District of Columbia Circuit.
 Argued June 11, 1956.
Decided Feb. 14, 1957.
 
 [100 U.S.App.D.C. 206] Mr. Reuben Goldberg, Washington, D. C., and Mr. George E. Morrow, Memphis, Tenn., of the bar of the Supreme Court of Tennessee, pro hac vice, by special leave of Court, for petitioner in No. 12837.
 Mr. William E. Miller, Washington, D. C., with whom Messrs. Raymond N. Shibley and George B. Mickum, III, Washington, D. C., were on the brief, for petitioner in No. 12840.
 Mr. William L. Ellis, Attorney, Federal Power Commission, with whom Mr. Willard W. Gatchell, General Counsel, Federal Power Commission, was on the brief, for respondent.
 Mr. Christopher T. Boland, Washington, D. C., with whom Messrs. Richard J. Connor, John T. Miller, Jr., Washington, D. C., and Thomas F. Ryan, Jr., Austin, Tex., were on the brief, for intervenor, Texas Gas Transmission Corporation. Mr. Walter E. Gallagher, Washington, D. C., also entered an appearance for intervenor, Texas Gas Transmission Corporation.
 Mr. Charles V. Shannon, Washington, D. C., for intervenor, American Louisiana Pipe Line Co. Mr. Stanley M. Morley, Washington, D. C., also entered an appearance for intervenor, American Louisiana Pipe Line Co.
 Before PRETTYMAN, WASHINGTON and DANAHER, Circuit Judges.
 DANAHER, Circuit Judge.
 
 
 1
 Four independent producers[1] sought certification to supply to American Louisiana Pipe Line Company part of its requirements for natural gas to be delivered from Louisiana to Michigan. The balance of the natural gas requirements for American Louisiana was to be supplied by Texas Gas Transmission Corporation. Panhandle Eastern Pipe Line Company's petition to intervene in these producer proceedings and to consolidate them with proceedings In the Matters of American Louisiana Pipe Line Company, Commission Docket G-2306,[2] having been denied by Commission Order of April 18, 1955, and its petition for rehearing thereof having been denied by Commission Order of June 13, 1955, Panhandle asks us to review and set aside those two orders, predicating jurisdiction upon § 19(a) and (b) of the Natural Gas Act.[3] The petition of Memphis Light, Gas and Water Division to intervene in the producer proceedings likewise by Commission Order of April 18, 1955, was denied, but Memphis was allowed limited participation. The Commission having certificated the producers by its order of May 9, 1955, Memphis thereupon asked rehearing of its petition to intervene and of the May 9, 1955 certification. The Commission, by its order of June 13, 1955, denied the Memphis petition for rehearing with respect [100 U.S.App.D.C. 207] to the first order, and by order of July 5, 1955, denied the Memphis petition for rehearing of the Commission's May 9, 1955, certification order. Memphis, resting its petition on § 19(b) of the Natural Gas Act, now seeks review of the four orders mentioned. We consolidated the petitions for review filed by Panhandle and Memphis, and also allowed American Louisiana and Texas Gas to intervene. The intervenors and the Commission filed timely motions to dismiss, action upon which was deferred,[4] without prejudice to renewal, until after argument on the merits. We are now satisfied that the motions to dismiss must be granted.
 
 Background
 
 2
 The pipeline proceedings, Commission Docket G-2306, disclose that American Louisiana was authorized to construct and operate a 1,300-mile pipeline system extending from Louisiana to Michigan, estimated to cost approximately $130,000,000 and to possess an initial capacity of about 300,000 Mcf. of natural gas per day. In related proceedings, Docket G-2311, Texas Gas sought and was granted authority to construct and operate facilities to deliver to American Louisiana approximately 50,000 Mcf. of natural gas per day. American Louisiana had proposed to deliver 100,000 Mcf. per day to Michigan-Wisconsin Pipe Line Company and 200,000 Mcf. per day to Michigan Consolidated Gas Company. The Commission conditioned American Louisiana's certificate to require that there be filed a schedule of rates satisfactory to the Commission at least 60 days prior to the commencement of service. The Commission further concluded that the gas reserves available to American Louisiana under its purchase contracts were reasonably adequate to meet the requirements of the proposed project. As to Texas Gas, the Commission found that certification was required by public convenience and necessity, that Texas Gas was able to carry out its proposal, and concluded that there was merit in the claim of Texas Gas that the proposed sale to American Louisiana would ultimately redound to the benefit of the customers of Texas Gas.
 
 
 3
 Although Panhandle had been allowed to intervene in opposition to the American Louisiana application, the Commission noted that Panhandle had submitted no proposal to meet additional needs of Michigan Consolidated or of the other customers of Michigan-Wisconsin.
 
 
 4
 Memphis sought no rehearing and no review of the Commission's orders in the pipeline proceedings. However, Panhandle's petition to review the Commission's order accompanying its opinion in No. 276 was dismissed by the Third Circuit Court of Appeals.[5] The court noted that the only gas from Panhandle to any of the distributing companies which would obtain gas from the American Louisiana project is to be supplied to Michigan Consolidated. Panhandle had actually been seeking to reduce the quantity of gas it furnished to Michigan Consolidated. The court observed that the gas to be delivered to the latter by American Louisiana 'is not in displacement of any part of its Panhandle allotment but over and above it in order to provide for the increased requirements of the Michigan Consolidated territory.'[6] Panhandle, the court noted, had 'participated fully in the exhaustive hearings and arguments below.'
 
 
 5
 Thus, in brief review, we see consumers in the Michigan-Wisconsin area found to be in great need of additional supplies of natural gas, to meet which need the American Louisiana project, after extensive hearings, was certificated. Its supplies in part were to come from Texas Gas which had been authorized to make such deliveries. Both Panhandle [100 U.S.App.D.C. 208] and Memphis were parties to the pipeline proceedings and participated extensively therein. Panhandle's petition to review was dismissed, and Memphis sought no review. Certainly the pipeline proceedings were terminated, and all that remained was certification of American Louisiana's other suppliers. By December 1, 1954, the four independent producers, here involved, had filed their applications for authorization to sell their gas to American Louisiana, which the Commission consolidated for hearing pursuant to notice of March 7, 1955.
 
 No. 12840
 
 6
 Panhandle argues to us that the Commission abused its discretion in denying intervention in the producer proceedings in view of the fact that it had been allowed to intervene in the pipeline proceedings. Panhandle complains further that the Commission erred in rejecting its motion to consolidate the producer proceedings with the earlier--but terminated--pipeline proceedings.
 
 
 7
 We have repeatedly refused, even where consolidation is sought at the instance of a proper party, to interfere with the control by an agency over its own proceedings.[7] In the Commission's denial of consolidation we find no error.[8]
 
 
 8
 Whatever interest Panhandle had in the American Louisiana pipeline proceedings had been conclusively disposed of both by the Commission and by the courts. Although a party, Panhandle was found not to be aggrieved by the American Louisiana project. It has no present interest to be heard as to where American Louisiana obtains its gas. We pointed out in National Coal Ass'n v. Federal Power Commission[9] a very real distinction between those who are entitled to intervene as of right and those who are entitled to intervention at the discretion of the Commission.[10]
 
 
 9
 Here, there is no allegation that Panhandle has an interest to protect, nor has it set up a basis for a challenge, arising from American Louisiana's contracts with its suppliers. Panhandle alleges no contractual relations with any of the four independent producers. It makes no claim to intervention as of right. On the contrary, giving Panhandle's petition its broadest sweep, the Commission was shown no more than a continuing interest in the market served by Michigan Consolidated, one of Panhandle's customers which, through the American Louisiana project, is to receive an additional supply of gas, over and above that supplied by Panhandle. But competition between Michigan Consolidated and Panhandle, however important as a factor for consideration in the pipeline proceedings, is too remote to ground Panhandle's claim in the pending producers' matter to an exercise of the Commission's discretion in its favor.
 
 
 10
 Panhandle's petition for rehearing added nothing new. Rather, consideration of its representations discloses only an emphasis of claims extensively pursued and concluded in the pipeline proceedings.
 
 
 11
 [100 U.S.App.D.C. 209] Panhandle sought no rehearing of the May 9, 1955 order certificating the producers, and under the express language of the Act[11] cannot now be heard on this aspect of the case.
 
 
 12
 The motions to dismiss Panhandle's petition to review the orders of April 18, 1955 and of June 13, 1955 are granted.
 
 No. 12837
 
 13
 Memphis, in its petition for leave to intervene, told the Commission it is engaged in distribution and sale of natural gas in Memphis and near-by areas. As a city gate customer of Texas Gas, it obtains all its gas under a requirements contract. It alleged that the producers planned to sell gas from various fields in Louisiana--not to Texas Gas--but to American Louisiana, under contracts containing various price adjustment provisions and 'favored nation' clauses. There was no allegation that Texas Gas had any contractual relationship with any of these producers, or that Memphis was a customer of any of them, or that Memphis had any interest in the delivery and sale of gas to Michigan. Memphis claimed no relationship whatever with American Louisiana. Certainly, laying aside Texas Gas for the moment, Memphis could not be said to have the slightest interest in what prices American Louisiana might pay to its suppliers for gas, none of which went to Memphis.
 
 
 14
 Undoubtedly taking a compellingly practical view of this situation, and realizing that its interest in the earlier pipeline proceeding as to Texas Gas[12] had been explored and concluded, Memphis in the present matter told the Commission:
 
 
 15
 'The Division further states that a number of these fields are located near fields from which its supplier, Texas Gas Transmission Corporation purchases natural gas. Division avers that in the natural course of events these price adjustment clauses and Favored Nation clauses in the contracts between above applicants will affect the prices which Texas Gas Transmission Corporation, its supplier, will have to pay for natural gas near such fields when its contracts for such natural gas supplies have to be renegotiated, which will be necessary in the early future.'
 
 
 16
 How prices paid by American Louisiana to its suppliers, which were not alleged to have any relationship with Texas Gas, would adversely 'affect' prices to be paid by Texas Gas to its suppliers, or how or when prices paid by Texas Gas would adversely affect Memphis remained for the Commission's speculation. There is no allegation that the Commission had approved or would approve the price adjustment or favored nation clauses, or that 'the prices' are unreasonable. That there is no allegation of direct and immediate injury to Memphis seems obvious. That the Commission could readily conclude, in view of Phillips Petroleum Co. v. State of Wisconsin,[13] that it is authorized effectively [100 U.S.App.D.C. 210] to deal with future rate problems if and when they might arise seems equally clear. Absent a showing by Memphis of entitlement to intervention as of right, it was open to the Commission to conclude Memphis had equally failed to demonstrate current aggrievement calling for intervention in the exercise of its discretion.[14] The Commission, denying intervention, April 18, 1955, ruled that Memphis 'may participate in the hearing in these proceedings to the extent of rendering a statement relevant and material to the issues, file briefs, and be heard in oral argument, if the latter is provided.'
 
 
 17
 Memphis did so participate. It asked, as an alternative to a finding of reasonableness of beginning rates, that the Commission 'should expressly refuse to make a finding or order on the question of rates,'[15] and that the suppliers' certificates contain the following:
 
 
 18
 'The grant of certificates herein is not intended to be, is not, and shall not be construed to be, a determination of either the legality or the illegality or the propriety or impropriety of the inclusion in the gas purchase contract or contracts with which this proceeding is concerned of favored nation clause, most favored nation clauses, escalation clauses, or redetermination clauses. Nor shall it be construed as a waiver of any of the requirements of Sections 4 and 7 of the Natural Gas Act as amended or of Sections 154 and 157 of the Federal Power Commission's rules and regulations thereunder relating either to the filing or approval of rate schedules or right charges for the services herein authorized or relating to further proceedings under Section 7 of the Act or any other section thereunder.
 
 
 19
 'And this authorization is without prejudice to any determination of any question of rates or charges arising out of the provisions of any gas purchase or sales contract filed as a rate schedule or any findings or orders which have been or may hereafter be made by the Commission in any proceeding now pending or hereafter instituted by or against the respective applicants by any party or interested person.'
 
 
 20
 The Commission complied, in essence, with both requests.
 
 
 21
 The Commission, as part of its 'Findings and Order Issuing Certificates of Public Convenience and Necessity' to the producers, required acceptance in writing of the certificates, subject to the Natural Gas Act and the Commission's 'applicable rules, regulations, and orders,' and expressly provided:
 
 
 22
 'The grant of the certificates herein shall not be construed as a waiver of the requirements of Section 4 of the Natural Gas Act, of [100 U.S.App.D.C. 211] Section 154 of the Commission's Rules and Regulations thereunder requiring the filing of rate schedules for the service herein authorized; and is without prejudice to any findings or orders which have been or may hereafter be made by the Commission in any proceeding now pending or hereafter instituted by or against the Applicants. Further, our action in this proceeding shall not foreclose nor prejudice any future proceeding or objection relating to the operation of any price or related provision in the gas purchase contracts herein involved.'[16]
 
 
 23
 The Commission found that the applicants, in their sale of natural gas in interstate commerce, are natural gas companies, subject to the Commission's jurisdiction, that the sales herein considered are subject to the requirements of the Act, and the Commission's May 9, 1955 order is so predicated. None of the producer applicants has contended otherwise.
 
 
 24
 Memphis thereafter sought rehearing of the April 18, 1955 order denying intervention, charging the Commission with arbitrary and capricious action, tantamount to a denial of due process. Its petition alleged an interdependence of the instant producer applications upon the American Louisiana pipeline cases, with a review, step by step, of the history of the pipeline cases, in what Memphis called its 'Statement of Facts.' Omitted were all references to the decision of the Court of Appeals in the Third Circuit and the two rulings by the Supreme Court,[17] and the fact that Memphis had sought no rehearing and no review. Memphis went on to say that its interest in the producer proceedings is 'the same interest' it had alleged in the pipeline cases. It might well have seemed to the Commission, as it does to us, that Memphis had a proper interest in whether or not a certificate to its supplier, Texas Gas, might adversely affect Memphis' sole source of supply. When, after participation as a party, with standing to explore fully the effect upon Memphis if Texas Gas should be authorized to sell gas to American Louisiana, Memphis stood upon the record as made, it can hardly now be heard to say that the 'same interest' is present in certificate proceedings involving four independent producers who seek to sell their gas to American Louisiana. If it could be said to be the 'same interest,' the position of Memphis was finally terminated in the pipeline cases when Texas Gas was certificated.
 
 
 25
 With no new or different allegations of injury than we have previously described, and no new factual allegations as to price, and no proffer as to how the prices of the present applicants will affect a price to be paid by Memphis--merely assuming a contingency presently speculative, namely that the Commission will permit some different or higher price than is now received from Memphis by Texas Gas[18]--Memphis simply argued that denial of intervention had been 'a gross abuse of discretion.'
 
 
 26
 As new matter in the petition for rehearing, it was argued for the first time, that Memphis Division, a city department for the sale and distribution of gas, is a 'regulatory' body, within the meaning of the Commission's Rule.[19] [100 U.S.App.D.C. 212] Aside from the fact that Memphis had previously alleged and argued its position as a city gate customer of Texas Gas, which it seems to be, the Memphis Division was still bound under Section 15(a) of the Natural Gas Act[20] to make a showing that would call for exercise of the Commission's discretion permitting intervention.
 
 
 27
 Memphis next alleged that the Commission, in violation of Section 6(d) of the Administrative Procedure Act,[21] had failed promptly to give notice of the denial of intervention. Suffice it to say that notice of the Commission's order of April 18, 1955, was served on counsel the following day which would seem to be as reasonably prompt as the law might require. Moreover, the requirements of Section 6(d) were fully met, not only because the notice was self-explanatory, but because Memphis was given reason for the denial, in that Memphis was found not to have shown an interest of such nature as to warrant intervention as a party.
 
 
 28
 Not only its original petition, but its petition for rehearing, had failed to allege facts upon which Memphis demonstrated aggrievement or that it was adversely affected by an order resulting in direct and immediate injury. Lacking status entitling it to intervention as of right, Memphis has failed to show that the Commission otherwise abused its discretion in denying intervention. We therefore do not reach the later orders of which Memphis complains.
 
 Conclusion
 
 29
 We have given extended consideration to the entire record before us as well as to the proceedings antedating the producers' applications. We are satisfied that Panhandle and Memphis lack standing. Since neither is a 'party' to this proceeding within the meaning of Section 19(b) of the Natural Gas Act,[22] aggrieved by the Commission's orders of April 18, 1955, neither may here obtain the review each had asked. The motions to dismiss must be granted.
 
 
 30
 Dismissed.
 
 
 
 [1]
 The Superior Oil Company, Kerr-McGee Oil Industries, Inc., British-American Oil Producing Company, and Stanolind Oil & Gas Company
 
 
 [2]
 Opinion No. 276, issued October 1, 1954, disposed also of the Texas Gas application, Docket G-2311, the consolidated matters being hereinafter referred to as the 'pipeline proceedings.' Panhandle sought review in Panhandle Eastern Pipe Line Co. v. Federal Power Comm., 3 Cir., 1955, 219 F.2d 729, certiorari denied, 349 U.S. 945, 75 S.Ct. 874, 99 L.Ed. 1272, rehearing denied 1955, 350 U.S. 868, 76 S.Ct. 99, 100 L.Ed. 769
 
 
 [3]
 52 Stat. 831, 15 U.S.C.A. § 717r(a) and (b)
 
 
 [4]
 We wished to explore fully the possible impact upon the four independent producers of the Court's opinion in Phillips Petroleum Co. v. State of Wisconsin, 1954, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035, especially with reference to the Commission's jurisdiction over them. The opinion came down while the pipeline proceedings were in progress
 
 
 [5]
 Supra note 2
 
 
 [6]
 219 F.2d at page 731
 
 
 [7]
 United Airlines v. Civil Aeronautics Board, 1955, 97 U.S.App.D.C. 42, 45, 228 F.2d 13, 16. See also American Trucking Ass'ns v. United States, 1945, 326 U.S. 77, 83, 65 S.Ct. 1499, 89 L.Ed. 2065; Federal Communications Commission v. Pottsville Broadcasting Co., 1940, 309 U.S. 134, 138, 60 S.Ct. 437, 84 L.Ed. 656; and see Federal Communications Comm. v. WJR, 1949, 337 U.S. 265, 272, 69 S.Ct. 1097, 93 L.Ed. 1353
 
 
 [8]
 § 15(a) of the Natural Gas Act, 15 U.S.C.A. § 717n(a)
 
 
 [9]
 1951, 89 U.S.App.D.C. 135, 191 F.2d 462
 
 
 [10]
 'We think it is clear that any person who would be 'aggrieved' by the Commission's order, such as a competitor, is also a person who has a right to intervene. Otherwise, judicial review, which may be had only by a party to the proceedings before the Commission who has been 'aggrieved' by its order, could be denied or unduly forestalled by the Commission merely by denying intervention.' Id., 89 U.S.App.D.C. at page 139, 191 F.2d at page 467. The interest of Panhandle as a competitor had been recognized and explored in the pipeline proceedings
 
 
 [11]
 § 19(a). And see F.P.C. v. Colorado Interstate Gas Co., 1955, 348 U.S. 492, 500, 501, 75 S.Ct. 467, 99 L.Ed. 583
 
 
 [12]
 There, the positive interest of Memphis was clear because of the effect upon it as a customer of and rate payer to Texas Gas, its sole supplier, as was Pittsburgh in City of Pittsburgh v. Federal Power Commission, 1956, 99 U.S.App.D.C. 113, 237 F.2d 741. There, it was conceded by all parties that the City of Pittsburgh, a customer of Texas Eastern Transmission Corporation, would be aggrieved by a reduction of supply or an increase in cost, with a 'direct' interest accordingly, and with 'immediate' injury due to the impending approval of displacement of an important supply line. Despite the fact that Pittsburgh was confronted with a present abandonment of an essential conduit as to the replacement of which, with attendant increased costs, Pittsburgh could do nothing, proffered proof to that effect was excluded by the Commission. On such grounds, Pittsburgh had been allowed to intervene before the Commission, and we said Pittsburgh was entitled to be heard here
 
 
 [13]
 Supra note 4, which makes it clear that the Natural Gas Act, 15 U.S.C.A. § 717 et seq. applies to independent producers such as the applicant here
 The Commission, as a first step following the Phillips case, by its Order 174-B, 19 Fed.Reg. 8807 (See 18 C.F.R. Part 154), defined an 'independent producer' in relation to various provisions of the Act. It issued its orders, construed and sustained in Amerada Petroleum Co. v. Federal Power Comm., 10 Cir., 1956, 231 F.2d 461, and Magnolia Petroleum Co. v. Federal Power Comm., 5 Cir., 1956, 236 F.2d 785, certiorari denied, 1957, 352 U.S. 968, 77 S.Ct. 356, 1 L.Ed. 2d 322; cf. Federal Power Commission v. Union Producing Co., 1956, 97 U.S.App.D.C. 223, 230 F.2d 36; Gulf Oil Corporation v. Federal Power Commission, 1956, 97 U.S.App.D.C. 227, 230 F.2d 40; Rochester Tel. Corp. v. United States, 1939, 307 U.S. 125, 129, 130, 59 S.Ct. 754, 83 L.Ed. 1147. Its order, infra, certificating the instant producers, specifically asserted a reservation of jurisdiction under section 4 of the Act and Section 154 of the Commission's Rules.
 
 
 [14]
 15 U.S.C.A § 717n(a); National Coal Ass'n v. Federal Power Commission, 1951, 89 U.S.App.D.C. 135, 191 F.2d 462, 466, 467. If Memphis on this record could be deemed entitled to intervene, all city gate customers of Texas Gas might assert like prerogatives. It may be doubted that Congress contemplated any such result. United States Cane Sugar Refiners' Ass'n v. McNutt, 2 Cir., 1943, 138 F.2d 116, 120
 
 
 [15]
 The Commission took that course. Cf. note 13 supra, and the exact language of the order, infra
 
 
 [16]
 The Commission has since instituted investigations into whether or not the rates, charges, and classifications for or in connection with the sale or transportation of natural gas 'by the Respondent herein,' subject to the jurisdiction of the Commission, and the rules, regulations, practices, and contracts relating thereto may be unjust, unreasonable, unduly discriminatory, or preferential. Orders instituting the investigation as to two of the producers were entered before, and as to the other two, since argument herein. That the Commission will take action agreeably to its findings and conclusions in such proceedings, we cannot doubt
 
 
 [17]
 Supra note 2
 
 
 [18]
 But see note 13 supra, and compare California Oregon Power Co. v. Federal Power Comm., 1956, 99 U.S.App.D.C. 263, 239 F.2d 426
 
 
 [19]
 18 C.F.R. § 1.8 (1949)
 
 
 [20]
 15 U.S.C.A. § 717n(a)
 
 
 [21]
 60 Stat. 240, 5 U.S.C.A. § 1005(d)
 
 
 [22]
 52 Stat. 831, 15 U.S.C.A. § 717r(b)