The **JUPITER CORPORATION,**
Petitioner,

v.

**FEDERAL POWER COMMISSION,**
Respondent.

No. 15396.

United States Court of Appeals
Seventh Circuit.

June 8, 1966.

William W. Brackett, Howard R. Koven, Friedman, Koven, Salzman, Koenigsberg, Specks & Homer, Ross, Hardies, O'Keefe, Babcock, McDugald & Parsons, Chicago, Ill., for petitioner.

Richard A. Solomon, Asst. Gen. Counsel, Israel Convisser, Atty., Howard E. Wahrenbrock, Sol., Robert A. Jablon, Atty., F. P. C., Washington, D. C., for respondent.

Before DUFFY, KNOCH and KILEY, Circuit Judges.

DUFFY, Circuit Judge.

A proceeding is pending before the Federal Power Commission designated Docket No. AR61–2 et al., Area Rate Proceeding (Southern Louisiana Area). This proceeding was instituted on May 10, 1961 (25 FPC 942) to establish just and reasonable rates for all natural gas produced on-shore in Louisiana south of the 31st degree parallel, and off-shore thereof, and sold in interstate commerce for resale.

Petitioner Jupiter, which owns and operates a comparatively small under-water natural gas pipeline system, off-shore Vermillion Parish, Louisiana, within the "South Louisiana Area", was originally made a party to this proceeding. However, by order of February 18, 1963, the Federal Power Commission deleted Jupiter on the ground that it "performs transportation services" and "does not have any production in the area."

Two months earlier, on December 5, 1962, the Commission had instituted a proceeding under Section 5(a) of the Natural Gas Act, to determine the reasonableness and lawfulness of Jupiter's rates.

Docket No. RI63–212, 28 FPC 942. This separate proceeding also is presently pending before the Commission.

Jupiter obtains natural gas from two connected platforms in the Gulf of Mexico and carries it through its system to the on-shore lines of Tennessee Gas Transmission Company (now Tenneco Corporation, and hereinafter referred to as "Tennessee") in Southern Louisiana.

The gas is initially collected at individual well-heads by three large producing companies, Pure Oil, Phillips and Kerr-McGee, and then delivered to large central off-shore platforms where Jupiter receives the gas in its own pipe lines and through such means, brings it on-shore. Thereafter, the gas is transported through Tennessee's lines to a plant operated by Jupiter twenty-nine miles on-shore where Jupiter separates the liquid condensate from the gas and re-delivers the gas to Tennessee.

Originally, Jupiter's transactions with Pure Oil and Tennessee were on a sale and resale basis. However, in 1957, their arrangement was reconstituted so that the title of the gas was to pass directly from Pure to Tennessee. A fixed fee was received by Jupiter from Pure for its service, but Pure's selling price to Tennessee included reimbursement for Jupiter's charge.

In its rate case, Jupiter is contesting the jurisdiction of the Commission. Jupiter claims that its operations are exclusively "gathering" and, therefore, its charges for moving Pure Oil gas and for the sale of the gas it purchases from Phillips, Kerr-McGee are exempt from Commission regulations under the statutory exemption of production and gathering. However, in the instant proceeding, Jupiter expressly states that it is not raising any jurisdictional issues.

On January 6, 1966, the Examiner in the Jupiter rate case issued his decision holding that Jupiter's movement of gas from the two platforms to the shore is a transportation function and not "gathering" as claimed by Jupiter; that the Commission has jurisdiction and that the just and reasonable charge for these services is .632 cents per Mcf which is about ⅕th of the amount Jupiter is presently charging. Objections to the Examiner's decision have been filed and the proceeding is awaiting Commission determination.

Prior to the issuance of the Examiner's opinion (March 10, 1965), Jupiter had moved that its rate case be dismissed or, in the alternative, that it be consolidated with the Area Rate Proceeding. This motion was denied on April 29, 1965.

On May 4, 1965, Jupiter filed its petition to intervene in the Area Rate Proceeding. This petition was denied. Jupiter then moved for a rehearing. This was treated as a motion for reconsideration and was denied. It is from these orders refusing to allow Jupiter to intervene in the Area Rate Proceeding that Jupiter now appeals.

The statute governing intervention under the Gas Act is 15 U.S.C. § 717n(a), which empowers the Commission to admit "interested" parties or others whose participation may be in the public interest.

The rule of the Commission with respect to intervention, 18 CFR 1.8(a) and (b) provides in part: "A petition to intervene may be filed by any person claiming a right to intervene or an interest of such nature that intervention is necessary or appropriate to the administration of the statute under which the proceeding is brought * * * Such right or interest may be * * * (2) An interest which may be directly affected and which is not adequately represented by existing parties and as to which petitioners may be bound by the Commission's action in the proceeding. * * *"

Jupiter maintains that it has an interest which will be directly affected by the Area Rate Proceeding and, therefore, it has a right to intervene in that Proceeding. One of the issues to be determined in the Area Rate Proceeding is the point at which the area rates to producers shall apply.

Jupiter desires to intervene in the Proceeding so that it can contend for a deter-

mination that the applicable area rate be to an on-shore point so that Jupiter's charges for delivering the gas on-shore will be paid by the producers and not the interstate pipeline.

If the Commission were to make this determination, Jupiter states that the producers whom it serves will have been compensated for gathering costs and Jupiter's contractual charges to those producers will be private contractual matters having no effect on the public interest.

The Commission has stated succinctly, and we think correctly, that Jupiter's ground for intervention is "that if the area rate applies to deliveries of gas at a point on-shore and so will cover Jupiter's services as part of the producers' costs, the consumers will not be affected thereby and, therefore the Commission may not, and ought not, in the Jupiter rate case, interfere with the charges fixed in its contracts with Pure and with Phillips-Kerr-McGee."

The Commission suggests that if the intervention were granted, Jupiter would, obviously, argue in its rate case that the decision in that case would have to be deferred until final determination of the Area Rate Proceeding—a vastly more complicated and lengthy proceeding.[1]

The Commission charges that Jupiter's petition to intervene is one of a series of delaying tactics. For over two years, Jupiter did not object or protest its deletion from the Area Rate Proceeding. In fact, the proceeding was drawing to a close when Jupiter's petition was filed. The Commission also points out that Jupiter is now collecting from its operation, $1,940,000 per year while the Examiner found that a proper rate would be $334,-859 per year. The Commission says that the repeated motions for continuances, three oral arguments in the United States District Court for the Northern District of Illinois, one oral argument in the United States District Court for the Southern District of Texas, and various motions for other relief, already have gained Jupiter considerable delay.

It is, indeed, improbable that any significant cost along the line which the natural gas travels will not be borne by the ultimate consumer. But even assuming that the consumer would not be affected by Jupiter's rates should the Commission determine the applicable point for the area rate to be on-shore, Jupiter's argument that the Commission would therefore have no right to reduce its charges even if they are determined to be unjust and unreasonable seems tenuous at best.

Even if we accept *arguendo* Jupiter's argument that it did have an interest that would permit it to intervene under the Rules of the Commission, such right could be exercised only within a reasonable period after the dismissal of Jupiter from the Proceeding. It does not follow that the Commission was required to permit intervention two years after Jupiter's deletion from the Proceeding, during which time no objection was made and at a time when the Proceeding in which intervention was sought was coming to an end.

We hold that the granting or denial of intervention under the circumstances just stated was a matter for the exercise of reasonable discretion by the Commission. Memphis Light, Gas & Water Division v. Federal Power Commission, 100 U.S.App.D.C. 205, 243 F.2d 628. We also hold that the Commission did not abuse its discretion in refusing to permit Jupiter to intervene at a time when the final stage of the Proceeding was close at hand and Jupiter had failed to explain satisfactorily its delay of more than two years in requesting intervention.

The orders of the Federal Power Commission denying Jupiter the right to intervene in the Area Rate Proceeding were correct, and such action is

Affirmed.

---

1. The Commission points out that in a similar area rate proceeding—Docket AR61-1, almost two years elapsed between the filing of briefs to the Commissioner and final disposition on rehearing.